### DELAWARE & H. CO. v. FLANNELLY et ux.†

(Circuit Court of Appeals, Third Circuit. May 19, 1909.)

No. 29.

RAILROADS (§ 348*)—INJURY TO PERSON ON CROSSING—CONTRIBUTORY NEGLIGENCE.

Evidence *held* to establish contributory negligence of a plaintiff, who was struck and injured by a fast train while driving over a dangerous crossing on defendant's railroad, where there were a number of tracks, with which she was familiar, where by her own testimony, after having stopped to look and listen at the usual place, some 40 feet before reaching the first track, and waiting for a freight train on such track to pass, which train, owing to a curve in the track, obstructed the view of any train approaching from the opposite direction, she at once drove on the crossing behind such train, without waiting until she could see whether the other tracks were clear, and was struck while crossing the second track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1144–1150; Dec. Dig. § 348.*]

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 164 Fed. 303. See, also, 165 Fed. 350.

James H. Torrey, for plaintiff in error.

Paul J. Sherwood, for defendants in error.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. John Flannelly and Mary Ellen Flannelly, his wife, the defendants in error, brought an action of trespass in the Circuit Court of the United States for the Middle District of Pennsylvania, against the Delaware and Hudson Company, the plaintiff in error, hereinafter called the defendant, to recover damages for bodily injuries to Mrs. Flannelly, the loss to her husband of her services, and the injury and destruction of certain personal property through the negligence, as alleged, of the defendant. It is alleged in substance in the statement of claim, among other things,

that while the plaintiff, Mrs. Flannelly, was with due care attempting to drive a horse and wagon across the railroad tracks of the defendant at a point where they cross at grade a public highway on which she had been travelling, leading from Scranton to Pittston, Pennsylvania, the defendant

"so negligently operated its freight trains upon said tracks as to destroy the usual opportunity at said crossing, to see or hear approaching trains and then did negligently and unlawfully run her down by a rapidly propelled passenger train, commonly called the 'Flyer,' which train was behind time and was being run at said time at great and unreasonable speed, and negligently approached said crossing without due and timely warning of its approach."

The case was tried before a jury and a verdict was found as follows:

"The jury do find in the above case in favor of the plaintiff, Mary Flannelly in the sum of $2,000, and in favor of John Flannelly in the sum of $500.00. Defendant company was negligent in failing to sound the blast of a whistle at the proper place and at the proper time at the crossing of the defendant where the plaintiff Mary Flannelly received her injuries."

A motion for judgment non obstante veredicto was denied and judgment in favor of the plaintiffs was entered on the verdict. The assigments of error though six in number raise in substance only the two following questions: First, was there or not sufficient evidence of actionable negligence on the part of the defendant to justify the jury in finding its existence? And, secondly, if the defendant was guilty of such negligence, did or not contributory negligence on the part of the plaintiff so clearly appear that the court below was bound to render judgment for the defendant non obstante veredicto? The counsel for the defendant at the hearing virtually abandoned, and, we think, properly, the contention that it had not been culpably negligent, and treat as "the real and vital point in the case" the question of contributory negligence. There is evidence in the case to the effect that Mrs. Flannelly on the morning of July 30, 1907, was driving a horse attached to a light lumber wagon, in which she and two small boys were riding, on her way from her home in Pittston township, Luzerne county, Pennsylvania, to the city of Pittston, about five miles distant; that to reach her destination she proceeded on a public highway which ran through the village of Dupont or Smithville; that in pursuing this route it was necessary to cross at grade the railway tracks of the defendant from east to west and, in approaching those tracks, to cross at grade the double tracks of the Lehigh Valley Railroad "cut-off" distant from the defendant's tracks several hundred feet; that the defendant's tracks were three in number and at the crossing parallel to each other and running in a generally northerly and southerly direction; that on the westerly side of the defendant's tracks and in close proximity to them there was a switch or branch track of the Lehigh Valley Railroad extending to a coal breaker about half a mile north of the crossing; that between the Lehigh Valley Railroad "cut-off" and the defendant's tracks and at the distance of between 20 and 50 feet from the latter there was a place where persons, driving such a conveyance as that occupied by Mrs. Flannelly, usually stopped to look and listen before undertaking

to cross the defendant's tracks; that Mrs. Flannelly after crossing the "cut-off" stopped at the usual place, she then being from 40 to 50 feet from the defendant's tracks, and looked and listened for approaching trains before undertaking to cross those tracks; that when she reached that place she saw a long freight train of high box-cars coming round a curve in the track from the north on its way southwardly towards Pittston; that it was moving slowly and she waited for it to pass; that it passed over the crossing on the track of the defendant nearest to her; that while thus waiting two trains, one moving north and the other south, passed behind her on the tracks of the Lehigh Valley Railroad "cut-off," and still another train passed to the north over the crossing on the switch or branch track of the Lehigh Valley Railroad which was the fourth track from her; that she did not see any train passing on the third or westerly track of the defendant; that after the freight train on the first or nearest track had moved to the south and cleared the crossing some distance and she had looked and listened in vain for an approaching train or a danger signal, she drove to and upon the first track so far that the head and front feet of the horse were on the second track, and there again stopped and looked and listened without seeing or hearing any approaching train; that she then drove on until the horse was over the middle of the second track when she first saw the train, the locomotive of which struck the wagon; that at this juncture the horse reared and pranced and delayed her several seconds notwithstanding her application of the whip to him several times; and that she drove across the second track but not far enough to clear the locomotive which struck the hind wheel of the wagon throwing its occupants out. Whether Mrs. Flannelly was delayed on the second track by unmanageable behavior on the part of the horse she was driving was a question for the jury. It is to be assumed that the jury believed she was. Had it not been for that delay the accident undoubtedly would not have happened. But this circumstance does not necessarily negative the existence of contributory negligence on her part operating as a proximate cause of the accident. She had, it is true, a right in the pursuit of her lawful journey to Pittston to use the public highway notwithstanding the fact that in so doing she would cross the defendant's tracks. It was expected and intended that the public using that highway should pass over the crossing. Otherwise the crossing would not have been placed there. But she was bound under existing conditions to exercise due care and circumspection in attempting to pass over the defendant's second track. There is uncontradicted testimony to the effect that while Mrs. Flannelly was accustomed to driving horses, the horse driven by her at the time of the accident was "kinder skittish sometimes." If, however, she in all respects observed reasonable care and caution in attempting to cross the tracks, we should not be prepared to hold that unmanageable behavior on the part of the horse, whether attributable to a restive or excitable nature or to the noise of passing trains, should be imputed to her as a fault. But from a careful examination of the evidence before us it is clear beyond all reasonable doubt that Mrs. Flannelly did not observe such care and circumspection as the law required

of her, and that there was nothing before the jury to justify a verdict importing that she had exercised such care and circumspection. The uncontradicted evidence shows that the Dupont or Smithville crossing was considered and was a dangerous one to any person negligently passing over it; that Mrs. Flannelly lived in the neighborhood and was familiar with the crossing; that at the "usual stopping place" a person at a distance of 40 feet from the first or easterly track of the defendant could, unless his view was obstructed by a passing train or other object, see a train approaching from the south at the distance of 2,300 feet; that about 700 or 800 feet to the south of the crossing the defendant's tracks curved to the west passing under the viaduct of a traction company situated about 1,950 feet below the crossing; and that owing to such curvature trains on any of the defendant's tracks below the crossing and above the curve would be calculated to conceal an approaching train whether below or above the viaduct. There is testimony to the effect that the train which struck the wagon was a fast passenger express known as the "Flyer"; that it was behind time; and that it was moving at a high rate of speed as it came northwardly round the curve to the south of the crossing and while approaching the point of collision. Mrs. Flannelly's own statements condemn her as negligent. Her testimony relative to the freight train of box-cars is in part as follows:

"Q. You say while you were stopped there before you went on the track, that a train passed on the D. & H. on the nearest track to you? A. Yes, sir. Q. You are very sure about that? A. I know the train passed on that track. Q. It was going towards Pittston? A. Yes, sir. Q. That is, going southerly? A. Yes, it was going towards Pittston. * * * Q. How far had the train that was on the track nearest to you gone over the crossing, before you started to go over? A. Towards the shanty. Q. What did you say? A. Towards the shanty—the flag shanty, some kind of a shanty was there—there was a little shanty there. Q. Would you say it was a hundred feet? A. I could not say that, it might have been more than a hundred feet; I couldn't say that for certain. Q. Would you say it was as much as two hundred feet? A. I might if I was there and took an interest; I haven't been there and took an interest of it since. Q. You started to go across that track? A. Yes, sir. Q. This train which was going down on the track nearest to you cut off your view way down the road, did it not? A. Yes, sir, cut off my view until I got on the second track—when the horse was on, and the engine pushing right towards me from up the valley—I couldn't make escape."

Here, then, was a woman of maturity, of sound mind, familiar with the crossing, knowing that from the usual stopping place she could see, in the absence of any obstruction, a train approaching from the south as far away as the viaduct or even further, who waited until the train of box-cars shut off her view to the south, and did not wait, notwithstanding the manifest danger of such an omission, until the defendant's tracks were sufficiently clear to enable her to cross them in safety. It is hard to conceive of a more negligent or reckless disregard of one's safety than was displayed by her in attempting to cross the defendant's tracks at the particular time she did and under the then existing conditions. Further, on her own showing, uncontradicted in the case, she failed to observe due care not only in undertaking to cross the tracks before she had an unobstructed view of them to the south, but in starting as she did from her first stop

on the tracks when she was behind the rear end of the receding train of box-cars. She testified as.follows:

"Q. How far could you see down the second track, when you stopped the second time with your horse's feet about the first track? A. To the nearest of my judgment, I should think about three hundred feet."

With this limited scope of vision it was perilous to the last degree to attempt to cross the second track as she did. She states that at the point of her second stop where she had only this limited view of the track to the south she "looked and listened up and down the track" before starting. That this was an utterly inadequate precaution is palpable in view of the fact that a train coming up the second track at the rate of 50 or 60 miles an hour would cover from 73 to 88 feet each second. But we do not attach so much importance to what Mrs. Flannelly did after reaching the first track as to what she did before. The horse she was driving may have become excited by the noise of passing trains and unmanageable, and she may have lost her presence of mind and resorted to mistaken tactics. The fatal error she committed was in leaving the "usual place" and getting on the tracks before she had an unobstructed view. Her uncontradicted statements disclose contributory negligence on her part. There was nothing in the case to warrant a verdict based upon an absence of all contributory negligence, and as there was nothing to warrant such a verdict the motion for judgment non obstante veredicto should have been granted.

The judgment below must be reversed, with costs, and it is so ordered.