WALTER H. HENDERSON, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

Division One, May 24, 1926.

1. **NEGLIGENCE:** Watchman: Ordinance: Unknown to Traveler: Withdrawal from Jury: Contributory. Where the ordinance required the railroad company to maintain a watchman at the much-traveled street crossing, the fact that plaintiff did not know of the existence

of the ordinance but did know that no watchman was maintained there, and therefore did not rely upon a warning from a watchman, will not authorize a peremptory withdrawal from the consideration of the jury the alleged negligence that defendant failed to maintain a watchman at the crossing to warn travelers as required by the ordinance. If defendant's failure to maintain a watchman as required by the ordinnce is the proximate cause of the traveler's injury, lack of knowledge of its existence will not deprive him of his right to recover. But knowledge or lack of knowledge of its existence, and lack of reliance by the traveler upon defendant's obedience or disobedience to it, are properly considered in determining the question of his contributory negligence. It being admitted that the railroad company did not maintain a watchman at the street crossing, as it was required to do by the ordinance, and it being admitted by the traveler that he did not know of the existence of the ordinance and therefore did not rely upon a warning by a watchman before he attempted to cross the tracks, the question still remains whether he exercised ordinary care for his own safty or was guilty of contributory negligence in view of the other facts relating to his conduct and to the actual situation. But it is inconsistent to hold that the traveler's negligence is for the jury to determine, and yet withdraw from their consideration the defendant's failure to have a watchman and to instruct them that defendant was not negligent in so failing.

2. ————: Automobile Traveler: Street Crossing: Ordinary Care: Obstructions: Looking and Hearing. The duty of the driver of an automobile, about to cross railroad tracks at a much-used street crossing, is not performed, by looking only from the point at which his view is obstructed. On approaching such a crossing he is approaching danger, and must act in accordance with the rule of ordinary care to protect himself from the danger. If objects obstruct his view, or noises interfere with his hearing, ordinary care for his own protection requires him to use care commensurate with the obstructions to his view and to his hearing before going upon tracks whereon he knows trains are coming and going at almost any hour.

3. ————: ————: ————: ————: Contributory Negligence: Matter of Law: Crossing behind Moving Train. It is negligence for a traveler, after waiting for a train to pass on a near railroad track at a much-used street crossing, to start across behind it without waiting until it has passed far enough to enable him to see a train approaching from an opposite direction on another near-by track. The plaintiff, about nine o'clock of a cloudy December night, was driving his automobile south on a much-traveled street, over which crossed, nine feet apart, two east-and-west railroad tracks, the south one of which

was the main track. As he approached the north track, which was a long switch track, a long freight train was moving eastward thereon, and he stopped about fifteen feet north of it. About the time the caboose of the train, moving slowly, passed from the east part of the street, he started across, and coming to the south track his automobile was struck by the engine of a train moving westward on the south or main track. When he stopped fifteen feet north of the north track another automobile had stopped, and two others drew up and stopped, and several others were on the south side of the crossing waiting to proceed' northward, and the lights from all these were shining towards the crossing, and their engines were running, and their noises and the noise of the train moving eastward obstructed his hearing, and he heard no whistle or bell. About six hundred feet east of the crossing the tracks curved southward, but there was no obstruction for that distance to the view of a train on the south track except the slowly moving freight train on the north track. Plaintiff looked as he went on the north track, but could' not see the train moving west on the south track, because his view was obstructed by the train moving eastward on the north track, but did not look eastward after the front wheels of the automobile were upon the north rail of the north track, and he heard no bell or whistle. When he started to cross none of the automobiles on the south side of the tracks had started, and their engines were running, and his was the first of the cars north of the tracks to attempt to cross. He knew that the freight train on the north track extended for a long distance eastward; that it extended beyond the curve; that there was a track south of that occupied by the freight train, and that there were trains coming and going on these tracks at almost any hour. *Held*, that plaintiff did not exercise ordinary care for his own protection, but was chargeable with contributory negligence as a matter of law.

Corpus Juris-Cyc. References: Railroads, 33 Cyc., p. 944, n. 65; p. 1009, n. 21; p. 1018, n. 76, 77, 78; p. 1021, n. 98; p. 1023, n. 5; p. 1029, n. 49, 52, 53; p. 1102, n. 24; p. 1126, n. 53.

## Transferred from Springfield Court of Appeals.

AFFIRMED.

*Frank B. Williams* and *John T. Sturgis* for appellant.

(1) The court excluded from the consideration of the jury the ground of defendant's negligence in failing

to have a watchman at the crossing in question to warn travelers of the approach of trains. The defendant concedes, and the evidence uncontradicted shows that defendant did not comply with the ordinance of the city in this respect. No watchman was at the crossing and no one warned plaintiff of the approaching danger. Defendant's violation of the city ordinance in this respect was negligence *per se*, and it was error to instruct the jury, as the court did, that defendant was not negligent in this respect. 33 Cyc. 949; 2 Thompson on Negligence, sec. 1538; 3 Elliot on Railroads (3 Ed.) pp. 502, 544; Annacker v. Railroad, 47 N. W. 66; Murray v. Railroad, 101 Mo. 236; Dahlstrom v. Railroad, 108 Mo. 525; Wilkins v. Railroad, 101 Mo. 93; Schlereth v. Railroad, 115 Mo. 87; Schlereth v. Railroad, 96 Mo. 509; Stotler v. Railroad, 200 Mo. 107; King v. Railroad, 211 Mo. 1; Yonkers v. Railroad, 182 Mo. App. 558. (2) The right of a city to require railroads to maintain flagmen at busy crossings, or provide other safeguards for the protection of the traveling public, belongs to the police power of the city, and is an inherent power of all cities for the protection and promotion of the public safety. 33 Cyc. 673; Seibert v. Railroad, 188 Mo. 657, 70 L. R. A. 752. (3) The duty cast on railroads by ordinance or statute to maintain flagmen at public crossings, or other devices to warn travelers of the approach of trains, is mandatory and not discretionary; and the duty of such flagmen is positive and active in giving warning to every traveler and on all occasions when trains approach or are about to move. The railroad cannot set up as a defense to its negligence that its violation of such duty has been so long continued, so open and flagrant, that the public generally, or some particular traveler, knew that no flagman was there and did not rely on one to give him warning. That would nullify the statute or ordinance and allow the railroad to profit from its own wrong. 33 Cyc. 946, 949; Annacker v. Railroad, 47 N. W. 66; Dickson v. Railroad, 104 Mo. 491; Murray v. Railroad, 101 Mo. 236; Wilkins v. Railroad, 101 Mo. 93; McNamara v. Railroad,

126 Mo. App. 152; Edwards v. Railroad, 94 Mo. App. 36; Montgomery v. Railroad, 181 Mo. 477; Lamb v. Railroad, 147 Mo. 171. (4) The only bearing which a knowledge on the part of the traveler that no flagman is being maintained at a crossing has on the case is on the question of contributory negligence. It is held that where a flagman, or other warning device, is required by law or is customarily maintained at a crossing, then a traveler on the highway has a right to rely to some extent on the absence of same as being an assurance of a clear crossing and an invitation to proceed. This, to an extent, excuses his act, which would otherwise be contributory negligence. Where the traveler knows that no flagman is kept there, he cannot say that his absence lured him into danger or that he was thereby led to be less vigilant. 33 Cyc. 1028; 3 Elliot on Railroads (3 Ed.) secs. 1667, 1651; Yonkers v. Railroad, 182 Mo. App. 558; McNamara v. Railroad, 126 Mo. App. 152; Edwards v. Railroad, 94 Mo. App. 36; 2 Shearman & Redfield on Negligence, sec. 467; Swigart v. Lusk, 192 S. W. 138. (5) The question of plaintiff's contributory negligence was one for the jury and not a matter of law. This is not the ordinary crossing case. The two tracks were so close together as to constitute one crossing. There was not room between the two tracks for a driver of an automobile to stop, as the front wheels of the automobile would be on the rail of the second track when the driver's body was over the rail of the first one. Plaintiff's negligence, therefore, must be gauged by what occurred in driving onto the first track. The courts have often held that it was not negligence, as a matter of law, for a traveler on the highway to assume, in passing over a crossing, that a second train will not pass over such crossing immediately after another train has cleared it. Trains are not generally and should not be run over a crossing so close together as not to allow one waiting for that purpose to cross over between times, and it is not negligence as a matter of law for a traveler to cross a track just after it is cleared by one train, re-

lying on the presumption that such crossing will not
be again used by another train before he has time to so
cross. McDaniel v. Hines, 239 S. W. 476; Baker v. Rail-
road, 147 Mo. 140; Baker v. Railroad, 122 Mo. 533;
Lamb v. Railroad, 147 Mo. 171; Kinney v. Railroad,
105 Mo. 270; Stevens v. Railroad, 67 Mo. App. 356;
Moore v. Transit Co., 95 Mo. App. 729; Deschner v.
Railroad, 200 Mo. 310; Weller v. Railroad, 164 Mo. 204;
Jones v. Railway, 220 S. W. 485; French v. Railroad,
116 Mass. 737; McGee v. White, 66 Fed. 502. (6) The
traveler's negligence, in failing to use proper care in
looking for and discovering an approaching train at a
crossing, is also to be measured and determined by what
are termed distracting and confusing circumstances
tending to divert and excuse a close and constant atten-
tion of the traveler in discovering a coming train. Here
there was not only the obstruction to sight by the out-
going train, the confusing noise of such train and its en-
gine toward the east and the waiting automobiles,
but plaintiff was thinking of only one crossing and one
track and was properly giving attention to the other auto-
mobiles massed on either side to avoid danger from that
source and was "worming" his way through, as the en-
gineer said, or "picking" his way through, as he said.
As the court said in McDaniel v. Railroad (239 S. W.
476), "There are too many distracting and confusing
circumstances to justify us in taking the case from the
jury because of the deceased's contributory negligence
in going upon the crossing." Woodward v. Railroad,
152 Mo. App. 468; Baker v. Railroad, 147 Mo. 140; Lamb
v. Railroad, 147 Mo. 171; McGee v. Railroad, 214 Mo.
530.

*W. F. Evans* and *Mann & Mann* for respondent.

(1) Under the facts in this case the trial court
properly withdrew from the jury, by instruction, the al-
leged negligence with reference to defendant's failure
to maintain a crossing watchman at this crossing as

provided by the city ordinance. This is not a case where the plaintiff was expecting the ordinance to be complied with. He testified that he had for a long time been familiar with this crossing and knew that no watchman was stationed at this crossing. He was not expecting a watchman to warn him; on the contrary, he knew that if a train was approaching there would be no watchman to warn him. He did not know of the ordinance requiring a watchman to be stationed at this crossing. The law indulges no presumption that the failure to comply with the ordinance was the cause of the accident. The burden was on the plaintiff to show that defendant's failure in this regard was a contributing cause. The evidence wholly fails to establish this fact. The violation of a city ordinance, as any other act of negligence, must be shown to have been a proximate cause of the accident. There is no presumption of law that because of the violation of the ordinance, the plaintiff's injury resulted proximately therefrom. Schmidt v. Transit Co., 140 Mo. App. 182; Burton v. Pryor, 198 S. W. 1121; Battles v. Railroad, 178 Mo. App. 596; Bibb v. Grady, 231 S. W. 1020; Roper v. Greenspoon, 192 S. W. 149; Decker v. Railway, 187 Mo. App. 207; Warner v. Railway, 178 Mo. 125; Bluedorn v. Railway, 121 Mo. 258; Weller v. Railway, 120 Mo. 635; Jennings v. Railway, 99 Mo. 394. Plaintiff must testify that he knew of the ordinance and relied upon its observance and the evidence must show that he was injured by reason of its non-observance, otherwise the case stands as though there had been no ordinance and its violation is not a proximate cause. Voelker Products v. Railroad, 185 Mo. App. 310; Paul v. Railroad, 152 Mo. App. 577; Mockowik v. Railroad, 196 Mo. 550. The failure to comply with the ordinance is not negligence as to one who knows it has been habitually violated. Reeves v. Railroad, 251 Mo. 169; Payne v. Railroad, 129 Mo. 405; Pope v. Railroad, 242 Mo. 232; Peterson v. Railroad, 270 Mo. 67; Vandeventer v. Railroad, 177 S. W. 834; Gubernick v. Railroad, 217 S. W. 33. (2) Even though the violation of

the watchman ordinance constituted negligence in this case, yet, where the plaintiff is guilty of contributory negligence, as a matter of law, it was the duty of the trial court to have directed a verdict for the defendant, notwithstanding the violation of the ordinance; and if it was error for the trial court to refuse to submit the violation of the ordinance as negligence, the error is harmless. (3) The plaintiff was guilty of contributory negligence as a matter of law and defendants demurrer offered at the close of plaintiff's evidence and renewed at the close of all the evidence should have been sustained. Langley v. Hines, 227 S. W. 877; Paul v. Railroad, 152 Mo. App. 577; Hornstein v. Railroad, 195 Mo. 440; Hafner v. Traction Co., 197 Mo. 196; Giardina v. Railroad, 185 Mo. 330; Ross v. Railroad, 125 Mo. App. 614; Zeis v. Railroad, 217 S. W. 325; Van Cleave v. Rys. Co., 181 S. W. 1084; Schaffer v. Union Electric Co., 242 S. W. 436; Osborn v. Railroad, 179 Mo. App. 245. The duty of a traveler approaching a railroad track is commensurate with the danger which may be encountered. The duty to look carefully and listen carefully is a continuing one until the crossing is passed, and if stopping is necessary in order to discharge this duty, then the traveler is negligent as a matter of law if he fails to stop. This duty is not discharged by looking or listening at a place where looking and listening is ineffective. Lyter v. Hines, 224 S. W. 841; Underwood v. West, 187 S. W. 84; Evans v. Railroad, 233 S. W. 399; State ex rel. v. Bland, 237 S. W. 1018; Osborn v. Railroad, 179 Mo. App. 245.

LINDSAY, C.—The plaintiff sued to recover damages for injury done to his automobile, which was struck by a train of defendant, upon a street crossing in the city of Springfield. The plaintiff, at night, was driving south on a much-traveled street, over which crossed, near together, two east-and-west tracks of defendant. The south one of these was the main track. As plaintiff approached near the north track, which was a long switch

track, a long freight train was moving eastward thereon. Plaintiff started across about the time the caboose of this train, moving slowly, passed from the east part of the street. Crossing the first track, and coming upon the south track, the automobile was struck by the engine of a train moving westward, on the south or main track.

The allegations of negligence were: (1) defendant's train which struck the automobile was running at a speed excessive under the circumstances, and in violation of a city ordinance; (2) failure to give warning by bell or whistle of the approach of the west-bound train; (3) failure of defendant to keep a watchman at the crossing to warn travelers, as required by a city ordinance; (4) running the west-bound train at high speed over the crossing of such street, in a populous city, immediately after another train, going in the opposite direction, had cleared the crossing, thereby causing congestion of travel and a dangerous condition. The answer pleaded a general denial and contributory negligence on the part of the plaintiff.

The plaintiff did not testify that he knew of the ordinance of the city requiring a watchman at that crossing, but said he was well acquainted with the crossing, having often passed over it, had never seen a watchman there, and knew no watchman was there at the time. It was shown, and indeed conceded, that defendant had not maintained, and did not maintain, any watchman at that crossing. Plaintiff presented his principal instruction, submitting the various acts of negligence alleged. A clause thereof would have told the jury that the ordinance of the city required the defendant to keep a watchman at this crossing, and that the failure to do so was negligence. The court struck that clause out of the instruction, and, on behalf of defendant, gave an instruction which expressly withdrew from the consideration of the jury the failure to maintain a watchman who would display a red flag by day and a red lantern by night, and further instructed the jury that the defendant was not negligent in failing to have such crossing watchman at the place.

There was a verdict for defendant. Upon appeal to the Springfield Court of Appeals, two of the judges were of the opinion that plaintiff was guilty of contributory negligence as a matter of law, and that the judgment should be affirmed upon that ground. There was a dissent upon that point. The views of the judges upon that question are severally set forth, in the principal opinion, the separate concurring opinion, and the dissenting opinion, and they may be found in Henderson v. St. Louis-S. F. Ry. Co., 248 S. W. 987 et seq. The judge, dissenting was of the opinion that the conclusion of the majority, that plaintiff was guilty of contributory negligence as a matter of law, was in conflict with the rulings of this court in certain cases hereinafter mentioned. Upon the hearing before the Court of Appeals, the sole assignment of error relied upon by the plaintiff was the action of the court in instructing as it did in respect to the ordinance requiring a watchman. On behalf of defendant, the contentions were that the action of the court in that regard was proper, if the case was submissible at all, but that the plaintiff was guilty of contributory negligence as a matter of law, and defendant's peremptory instruction should have been given.

The contention of the defendant as to the correctness of the action in the court upon the watchman ordinance, is stated and disposed of in the principal opinion, as follows: "It is contended by counsel for respondent that its failure to keep a watchman at the crossing cannot be used as a basis for recovery on the part of the plaintiff, because he did not testify or show that he knew of the city ordinance requiring a watchman to be kept at that crossing, and relied upon its being complied with by the railroad, and to sustain that position cites us to the following cases: Voelker Products Co. v. United Rys. Co., 185 Mo. App. 310, 316, 170 S. W. 332; Paul v. United Rys. Co., 152 Mo. App. 577, 587, 134 S. W. 3; Mockowik v. K. C., St. J. & C. B. Railroad Co., 196 Mo. 550, 571, 94 S. W. 256.

"Appellant contends that these and other cases only hold that knowledge of the ordinance, or the want of such knowledge, is to be considered in determining the question of contributory negligence. We agree with appellant's position on that question, and especially so as applied to the ordinance requiring the maintenance of a watchman at a railroad crossing. Such a crossing might be so located that surrounding noises and obstructions to the view would prevent a traveler on the street from either hearing or seeing an approaching train, and the only way that crossing could be made safe to persons on the street would be by the maintenance of a watchman to give warning of the approach of trains. In that case a careful person might be struck and injured as a direct result of the failure to maintain a watchman at the crossing, and it would be manifestly unjust to hold that a person who knew of the ordinance should be protected, while one who did not know of it should not be protected. If the failure to do the thing required by the ordinance should be the proximate cause of the injury, want of knowledge of the ordinance should not deprive the injured party of his remedy. Knowledge of an ordinance or the lack of it, and reliance upon the ordinance being obeyed or the lack of it, are, however, very properly considered in determining the question of contributory negligence."

The evidence· showed that the street in question, sometimes spoken of as Springfield Avenue, and sometimes as the National Boulevard, was one of the principal streets of the city, and that there was ordinarily much travel upon it. The south of the two tracks was the main line track of defendant's Memphis Line. The space between the two tracks at the crossing was about nine feet. The evidence was conflicting upon the question of the sounding of the whistle and ringing of the bell of the engine which struck plaintiff's automobile, and there was conflict as to the rate of speed of that train, but there was evidence that it was moving at a speed of

thirty to thirty-five miles an hour, and other evidence that its speed was ten or twelve miles.

The contention of counsel for defendant as to the failure to observe the ordinance requiring the watchman, is, that plaintiff did not testify he knew of that ordinance or relied thereon, but did testify he knew no watchman was in fact kept at the crossing; that there was no evidence to show that plaintiff was injured by reason of non-observance of the ordinance, and therefore, the case stands as though there had been no ordinance. Under this contention counsel cite the cases mentioned in the foregoing extract from the principal opinion. They further urge that the failure to comply with the ordinance is not negligence as to one who knows it had been habitually violated, citing Reeves v. Railroad, 251 Mo. 169, 176; Payne v. Railroad, 129 Mo. 405, 420; Pope v. Railroad, 242 Mo. 232, 239. These cases do not have the application to the instant case which counsel attempt to make of them. In Reeves v. Railroad, the deceased knew that the train which struck her, a regular train, and other trains customarily ran at a much higher speed than that provided by the ordinance. Charged with that knowledge, she stepped on the track in front of the train, which she knew was coming. In doing so, she was guilty of gross contributory negligence as it was held, because she could have no reason to suppose that on that particular day there would be done the unusual thing of reducing the speed of that train to twelve miles an hour. She could not rely upon such reduction of speed; therefore, her own negligence could not be excused by the fact that the defendant was negligent in violating the ordinance. Thus, in that case, her knowledge that the train ran customarily at a forbidden rate of speed, and the fact that she saw the train, were facts applied in the determination that she was negligent, and not in determining that defendant was not guilty of negligence. The like distinction may be made under the facts in the other cases cited. In this case the plaintiff is not claiming, and cannot claim, that failure of defendant to have a watchman at the

crossing is an excuse for negligence on his part. His position necessarily is that he was not misled by the failure to have a watchman. He acted upon his own knowledge and observation of an existing situation. The question as to whether he was contributorily negligent must be determined upon that basis. There being no watchman and plaintiff being aware of it, he was under the duty of exercising the care of an ordinarily prudent person under that situation. If there had been a watchman, plaintiff, being aware of it, still would have been under the duty to exercise ordinary care for his own safety, appropriate to that situation. A watchman is an active and not a merely passive agent of warning. He is more than a sign-board. Without risk to himself, he may see an approaching train more readily than the traveller approaching the crossing; and seeing, he may warn the traveller. Plaintiff stopped his automobile fifteen feet back from the north track. With a train moving on that track, it cannot be assumed that plaintiff could see all that a watchman, in the discharge of his duty, could have seen, of a train upon the other track. The reasons foregoing were applied to like circumstances by the Supreme Court of Iowa in Annaker v. Chicago, R. I. & P. R. Co., 81 Iowa, 269. It cannot be assumed that if there had been a watchman at the crossing, plaintiff would have driven thereon at the particular time he did. His negligence is to be determined by reference to his conduct under the situation as it was. If, in that actual situation, he was guilty of contributory negligence as a matter of law, he cannot recover. If his conduct under that situation was such that there was a question as to whether he was guilty of negligence contributing to his injury, then, his such negligence, if any, was a question for the jury, as was the negligence of defendant through its failure to maintain a watchman, and under the other alleged acts submitted. If plaintiff used ordinary care under the situation as it was (the known absence of a watchman), that was at least as high a degree of care, or higher, than would have been required of him, had a

watchman been present, and that fact known to him. Hence, it was inconsistent to hold that the plaintiff's negligence was for the jury, and yet to withdraw from their consideration the failure to have a watchman, and to instruct the jury that defendant was not negligent in so failing.

The question whether plaintiff himself was guilty of negligence as a matter of law, is the remaining and important question.

The time of the occurrence was at about nine o'clock of a cloudy December night. The plaintiff saw the freight train moving eastward over the crossing when he was about a block away. He was driving a special Studebaker Six touring car. When he drew near the track there was already at least one automobile waiting, which had stopped near the west curb. Plaintiff stopped his automobile a little to the right of the center of the street, and about fifteen feet from the north track. The street was about thirty feet in width from curb to curb. There was yet another automobile which drew up on plaintiff's left, and one or more in the rear of plaintiff. The headlights of these automobiles shone toward the track. There were several automobiles on the south side of the crossing, waiting to proceed northward, and the lights from these were shining toward the crossing. The engines from all or most of these machines were running, and plaintiff's engine was running. There was a large street light a short distance south, and west, of the crossing. When plaintiff drew up, he saw that there were three or four cars, and the caboose of the freight train, yet west of the crossing. There was conflict in the testimony as to whether a considerable number of cars in the train, especially those toward the rear, were box cars or cars of a lower body. Plaintiff said there were flat cars, coal cars and box cars in the train, "some box cars near to the caboose—two or three, probably." The tracks were straight on either side of the crossing for a considerable distance, but about two hundred yards east of the crossing the tracks curved southward. There was

no obstruction near to the west. There was no obstruction to the view of the train on the south track to the east of the crossing, for a distance of two hundred yards, except the freight train on the north track. It was a very long train, and plaintiff saw that it extended beyond the point of the curve east of the crossing.

Among the automobiles south of the crossing was a jitney bus. The driver was called as a witness by plaintiff. He said that he had driven his front wheels up to or on the rail of the south track, to await the clearance of the north track; that he saw the light of the west-bound train, coming on the south track, when it was about two hundred yards east of the crossing, and backed off that track. He said there was no whistle sounded, or bell rung for that train. Plaintiff said there was none, or, he heard none, and he did not see any headlight. He said nothing as to whether he saw the jitney back off the south track, and the precise moment when that was done was not fixed, but it was very little time before the west-bound train reached the crossing. The members of the crew of the west-bound train testified that the whistle was sounded and the bell was ringing, and several persons who were in the automobile said they heard the whistle of the engine of that train.

All of the testimony is to the effect that the freight train on the north track was running slowly, most of the witnesses said at seven or eight miles an hour.

Upon his direct examination plaintiff said: "There were two tracks there. The one this outgoing train was on was the sidetrack as I understand it, that is, the east-bound train was on the sidetrack, that is, on the north track. I have been thinking about that. I suppose the out-going train was on the main line. I only stopped a short time. The train soon cleared the street and as soon as it cleared the street I started to go across. I looked up each way and didn't see anything or hear anything. The automobiles I could see across the track started to move and I started on across. This track on which the out-going train was on is straight for a long

ways, entirely straight as near as I could tell. The east-bound train was pretty long and longer than to the curve. The two tracks there are nine or ten feet apart and are parallel with each other. I waited there until the caboose cleared the street, and when it cleared the street I started to move on across.'' And again on his direct examination he said: ''There was another car or two standing along by the curbing and I think I drove out around them. My recollection is there was two or three cars had come up there waiting for that train to pass on my side of the track, and then another car drove up to my left, that is, still east of me next to the east curb. That made three cars lined up across the street there. There was at least one back of me and maybe more. The last car that drove up to the east of me stopped also. I waited until the east-bound train cleared the street, then I looked each way, as I always do on crossings, and I didn't see any danger anywhere, no reason why I couldn't go across, and I started to go on across. I didn't know anything about another train coming into town on the other track. I didn't hear any whistling or ringing of a bell from the train coming in on that track. I was paying attention and didn't hear any alarm given at all. I didn't hear any bell ringing or whistle blowing. I looked out every way and, not hearing anything or seeing anything, I didn't see any reason why I couldn't drive on across and I started to do so. I saw no headlight. The headlights on the cars were, of course, burning and the headlights on the north-bound cars were shining when the street was cleared. The headlights on those cars were shining south. There were quite a number of them on that side. One in particular was a jitney bus, and those lights were all on and shining right across the crossing. There was a big street light near that crossing. I saw no headlight from any in-coming train.''

On cross-examination he said: ''I think that before the caboose passed I looked across and saw the automobiles on the other side. When I said that I started up

when the caboose cleared the crossing, I mean it had cleared the street. The tail end of the caboose was across the street when I started. It was just east of the east curb line. It had cleared so I could see the whole street. When the caboose got clear of the east curb line I started to move. That freight train was moving slowly. I guess some seven, eight or ten miles an hour. It was going just a little faster than you could walk at the time the caboose passed over the street. There is a sidewalk on the east side of the street and it is three or four feet from the curbing. I don't know whether the tail end of the caboose had passed the walk on the east when I started up." Farther on, he said: "When I started forward from my position, a little to the right of the center of the street, I went straight ahead and did not veer to the right or left. As near as I can tell, at the time I passed over the track where I was struck my automobile must have been a little to the right of the center of the street. When I started up I hadn't seen this other train. No signals were being given. This train moving on the north track was making the usual noise that a freight train makes and these different automobiles were also making noise. When the caboose cleared, before I started up, I saw the lights burning on the other cars that were on the south side. I don't know how many were there, possibly four or five. *None of them had started up. I don't remember that the car on my right or on the left had started up.* My engine was running and I threw it in low gear, then I released the clutch and started ahead. Just as I was doing that I was looking each way and I didn't see anything.

"Q. Do you remember looking again after you looked that time when you started your car; do you remember looking to the east or west any time after that time? A. Yes, sir, I kept looking going across, and I didn't see anything.

"Q. Where were you when you looked again to the east? A. Well, I would judge about the time I got on the north track.

"Q.   About the time the front wheels of your car got on the north track? A.   Yes, sir.

"Q.   You saw nothing then? A.   No, sir.

"Q.   At what rate of speed were you traveling then? A.   I was in low.; it must have been four or five miles. At that rate of speed I think I could have stopped my car within four or five feet. I looked when the front wheels of my car got to the north track. I don't remember that I looked to the east again at any time after that. I looked as I was moving up on the track, the first track. *The train still obstructed my view then. When I got on the track the caboose had gone but a little ways. It was moving slowly; it wasn't moving any faster than I was.* If I moved fifteen feet getting on the track, it would have moved at least fifteen feet from where I started. I estimate the speed of my automobile at four or five miles an hour. I stated a little bit ago that the train must have been going seven, eight or ten miles an hour. I don't remember anything that happened after I got on the track."

The brakeman on the rear of the caboose of the freight train testified that he saw the plaintiff starting toward the crossing, and shouted to warn him, and waived his lantern. Inquired of as to this, upon his cross-examination, plaintiff testified: "I didn't hear anybody call to me at the time I started my automobile. I did not see a man waving his lamp at me on the back end of that freight train. I saw a man on the back platform of the caboose. He didn't make any signals at me. I didn't see him make any. I did not hear him or anybody else call to me. *The last time I looked down the track east before I crossed I could see practically no distance at all. The train just cleared the street crossing when I started across and the view was obstructed by the car and the caboose. When my car got on the rails of the north track, the caboose was up a little piece, wasn't far east of the street.* I looked as I went up on the north track. I mean as I was going up on the track, I looked and saw no danger that my front wheels had

just got to the track. *When my body was over the south rail of that track, I couldn't have seen away over the track. You couldn't see for the out-going train.* The caboose on the out-going train was some distance from me. The tracks were parallel and about eight or ten feet apart.

"Q. When you drove up on that track you knew you couldn't see east on the other track for this train, didn't you? A. I thought this train was going out on the main line.

"I knew there was another track there and knew that if another train was coming in on the other track I couldn't see it for this train. If I had waited before driving on the track until this train went on some distance, there would have been nothing to obstruct my view. The out-going train was the only thing that obstructed my view of this approaching train."

The plaintiff testified that at that time his hearing was good and his eyesight good. He said on re-direct examination: "I stated a while ago that I started up in low and was going five or six miles an hour until I reached the track behind this caboose. From then on until I crossed the next track my travel was a good deal faster, because I would shift over into second. When I approached this north track and saw no danger, I thought I could go right on through, which I did. While this freight train was passing there was noise from the out-going train and noise from the motors around there."

On re-cross-examination he testified: "You knew there was another track there and you looked for the purpose of seeing whether anything was coming on that south track? A. I didn't know but what this out-going train was on the main track; I knew it was going out but I always looked. I knew there was a second track there." Then: "I looked more particularly to the west than I did to the east. I thought there was more danger there. The train going out, I looked more particularly to the west as I thought there might be another one following it. I thought there was where the most danger

would be. *I knew there were trains coming and going on these tracks at most any hour. When I looked the last time, when my front wheels were upon the north rail of the north track, I knew I couldn't see very far.* While I knew I couldn't see any train on the other track, 1 supposed I could have heard the whistle or heard the bell. I knew I couldn't see it, but that wouldn't keep me from looking." He said that at the speed of four or five miles an hour, at which he was going as he approached the north track, he could stop his automobile within four or five feet. His automobile was sixteen feet long from bumper to bumper, and it measured 8.5 feet from the front bumper to the driver's seat. The exact distance between the north track and the south track was eight feet and nine inches. The tracks were of standard width. Plaintiff's automobile was struck at a point a little in front of the rear left wheel.

Plaintiff's wife testified, and said that they waited for the freight train to pass, and stopped long enough for the train to clear the crossing; that when it cleared the crossing, Mr. Henderson started across. She said she heard nothing indicating a train was coming from the east; heard no whistle or bell. She said: "We could not see across from the automobile over on the other side. I was not looking for another train. I was sitting there with him in the front seat not thinking of another train." It was not shown whether she knew the character of the crossing.

The cause was certified to this court upon the theory, expressed in the dissenting opinion, that the holding of the majority was in conflict with the rulings in Baker v. Railroad, 122 Mo. 533; Lamb v. Railroad, 147 Mo. 171, and McDaniel v. Hines, 239 S. W. 471, and in each of which cases it was held, under the respective facts, that the question of the plaintiff's negligence was one for the jury.

As was said in the principal opinion in this case, in determining the question of plaintiff's negligence, every reasonable intendment is to be drawn in his favor. No

314 Mo. Sup.—28.

hard-and-fast rule can be fixed in any case, but each must be determined upon its own peculiar facts, regard being had to those general rules, applicable in all cases, in the determination of the question whether the party, in the given case, exercised the care of an ordinarily prudent person, under the same or like circumstances.

In the Baker case, the accident occurred in the day time, and the alleged obstructions to the view, an engine house and a coal platform, were of a permanent nature. The plaintiff, driving northward, had seen a train or part of a train drawn by an engine, pass to the east. She proceeded upon the crossing, and was struck by the first one of several box cars, which had been detached from that train, and which were moving east upon a parallel track. Of that circumstance it was said in the majority opinion, at page 545: "It will not do to say that this case stands precisely as it would had these detached cars been a regular train drawn by an engine." Immediately before that, describing the action of the plaintiff, it was said: "She saw the train pass, and when it had passed she would naturally infer that the way was clear, there being no other locomotive at all about the station." Reference was also made to the fact that it was a small station.

In Lamb v. Railroad, the plaintiff walking northward on a street in Pleasant Hill, nearly one block distant, and west of defendant's depot, stopped, immediately south of the first of several east-and-west tracks, to let a passenger train pass eastward on the second track from the south. As it passed off the crossing, she stepped on the first or south track, and was struck by the tender of an engine running backward, and westward on that track. There were no lights on the tender, and she could not see the light of the engine. The time was at about 8:30 in the evening in the month of June. There was conflict as to whether the bell was being rung. Plaintiff saw certain cars standing to the west of her. She looked east, and said she could have seen the engine and tender fifty yards to the east at the time she looked in that direction, ex-

cept for the smoke and dust from the passenger train, which had just gone by. The passenger train was proceeding to the depot. This is made plain by the plat shown and the statements made in the dissenting opinion in that case. In that case, therefore, the engine was moving backward, west, upon a track between plaintiff and that occupied by the passenger train, and along side of the passenger train, and at a time, and within the block in which was situated the depot at which the passenger train was to stop. The majority opinion turned mainly upon the testimony of the plaintiff, uncontradicted in that particular, that the smoke and dust from the passenger train prevented her from seeing the engine and tender.

In McDaniel v. Hines, the person struck was a girl fourteen years of age, and she was killed. She was walking north upon a road which crossed the defendant's tracks, a short distance west of its depot. The main track and the switch track were very close together at the crossing. There was a berry shed sixty feet long, situated one hundred sixty to two hundred feet east of the crossing, and four or five feet south of the switch track, which was south of the main track. There were piles of walnut logs extending from near the berry shed, to within about twenty feet of the crossing and on the south of, and within four or five feet of the switch track. A passenger train had just discharged passengers, and gone west on the main track, and passengers were walking westward on or along the tracks behind the passenger train. A freight train followed the passenger train, so closely, it was said, that the child from where she was at the time the passenger train cleared the crossing, could not have walked more than forty or fifty feet until she reached the track, where she was struck by the freight train.

In the dissenting opinion it was said, at page 994, that the opinion of the majority gave no weight to three circumstances to be considered in passing upon the question of plaintiff's contributory negligence: "First, plaintiff had in mind at the time that the east-bound train was on the main line; second, that he ought not, as a matter

of law, be held to anticipate that a second train on a parallel track nine feet distant would likely reach a much-used crossing in so brief a time after another train has cleared the same crossing; and, third, that when the eastbound train cleared the crossing the automobiles on the south and opposite side, where there were no obstructions, appeared to be making preparations to start up."

As to the first of these: While plaintiff did say he thought the north track was the main track, he said repeatedly that he did not know which was the main track; and he also said that he gave it no thought. As to the second: He knew that the freight train on the north extended for a long distance eastward. He knew it extended beyond the curve to the east, which was two hundred yards from the crossing. The two tracks were part of the main line running through the city, and it is clear, beyond any question, that plaintiff did not know which of these was the main track, but did know there was a track beyond that occupied by the freight train, and he said he knew, "there were trains coming and going on these tracks at most any hour." As to the third: While plaintiff said in his direct examination that the automobiles he could see across the track started to move, he also said: "Really the last thing I remember was the cars that looked crowded on the other side, and I was picking my way to get through the crowd." And afterwards he made the positive statement that "none of them had started." He knew the freight train was making the usual noises, and the engines of the automobiles were running, and that the head lights of four or five automobiles on each side were shining upon the crossing, an interference with his catching the sound of the train, if any, coming from the east, or the light from an engine, approaching from that direction. He also said when he last looked east where the freight train was, he was yet a very short distance from the line of the street. He could "see practically no distance at all."

There are numerous cases holding that it is negligence for a traveller, after waiting for a train to pass on

the near track, to start across behind it without waiting until it had passed far enough to enable him to see a train approaching from an opposite direction on another track. [Stowell v. Erie R. R. Co., 98 Fed. 520; Delaware & H. Co. v. Flannery, 172 Fed. 328; Fletcher v. Fitchburg R. R. Co., 149 Mass. 127.; Marty v. Chicago R. R. Co., 38 Minn. 108; Purdy v. N. Y. C. & H. R. R. Co., 33 N. Y. Supp. 952; Morrow v. N. C. R. R. Co., 146 N. C. 14.]

The duty of plaintiff was not performed by attempting to look only from the point at which his view was obstructed. [Kelsay v. R. R. Co., 129 Mo. 1. c. 372.] ''One approaching a railroad crossing knows that he is approaching danger, and must act in accordance with that knowledge, and in accordance with the rule of ordinary care to protect himself from danger. What is ordinary care upon his part under one state of facts might not be ordinary care under other and different facts. If objects obstruct his view, or noises interfere with his hearing, his conduct must meet these conditions before he has exercised ordinary care for his own protection under the circumstances surrounding him.'' [State ex rel. Hines v. Bland, 237 S. W. 1. c. 1019.] There was required of the plaintiff a care commensurate with the obstructions to his view and to his hearing, before going upon a track whereon he knew trains were coming and going at almost any hour.

Under the circumstances and under what the plaintiff himself said that he knew, we are forced to the conclusion that he did not exercise the care of an ordinarily prudent person, and for that reason the judgment should be affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.